IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PATRICIA D. SPARTO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HEARTS FOR HOSPICE, LLC, a Utah limited liability company; and SHAW PHILLIPS, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>Case No. 2:12-CV-801 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff Patricia Sparto's ("Sparto") Motion for Partial Summary Judgment.[1] For the reasons set forth below, the Court will grant Plaintiff's Motion.

I. BACKGROUND

Defendant-Counterclaimant Hearts for Hospice ("HFH") provides hospice and home health care to persons in Idaho and Utah. Defendant-Counterclaimant Shaw Phillips ("Phillips") is HFH's Chief Executive Officer. Sparto was employed by HFH as Vice President of Clinical Operations for Home Health until she was fired on January 21, 2011.

After her employment was terminated, Sparto filed a complaint with the Utah Antidiscrimination and Labor Division ("UALD") in May 2011, alleging sexual harassment by HFH and Phillips (collectively, "Defendants"). Sparto also filed a similar complaint with the Equal Employment Opportunity Commission ("EEOC"), which provided Sparto with a right to sue letter in May 2012. Sparto filed the Complaint in the instant case, alleging sexual discrimination and sexual harassment against Defendants.

---

[1] Docket No. 42.

1

On November 9, 2012, Defendants filed their Answer, in which they assert eight counterclaims against Sparto: (1) slander, (2) slander per se, (3) libel, (4) libel per se, (5) intentional interference with prospective economic advantage, (6) negligent interference with prospective economic advantage, (7) intentional infliction of emotional distress, and (8) negligent infliction of emotional distress. Each of these claims arise from Defendants' allegations that Sparto discussed her accusations about Phillips's sexual misconduct with the UALD, the EEOC, this Court, Sparto's family and friends, and HFH's current and former employees and patients.

On October 23, 2013, Sparto moved for partial summary judgment seeking dismissal of all eight of Defendants' counterclaims. Defendant Phillips has filed an Opposition to Summary Judgment but HFH has not responded to the Motion. On December 23, 2013, Sparto filed objections to four exhibits that Defendant Phillips included in his Opposition. As will be discussed in further detail below, even if the Court considers Defendant's exhibits, the counterclaims still fail. As such, the Court need not resolve Sparto's objections.

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3] The Court is required to construe all facts and reasonable inferences in the light most favorable to the

---

[2] Fed R. Civ. P. 56(a).

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

nonmoving party.[4]  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[5]  "If the burden of persuasion at trial would be on the *non-moving* party, . . . the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[6]  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."[7]

### III.  DISCUSSION

As a preliminary matter, "negligent interference with prospective economic advantage is not recognized under Utah law."[8]  Therefore, the Court will dismiss Defendants' claim for negligent interference with prospective economic advantage.

As to their slander, slander per se, libel, and libel per se claims, Defendants allege that Sparto "made false, disparaging and defamatory oral statements about Phillips and Heart[s] for Hospice . . . to past and present Hearts for Hospice employees and patients, as well as to her family and acquaintances, and to the UALD, EEOC and this Court."[9]

---

[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[5] *Anderson*, 477 U.S. at 249.

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

[7] *Anderson*, 477 U.S. at 252.

[8] *Best Vinyl, LLC v. Homeland Vinyl Prods., Inc.*, No. 2:10-CV-01158 DN, 2012 WL 5818154, at *2 (D. Utah  Nov. 15, 2012) (citing *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982)).

[9] Docket No. 8, at 12–14.

Sparto argues that summary judgment on these claims is appropriate because the judicial proceedings privilege bars Defendants' claims and because Defendants' evidence in support of their claims is insufficient to proceed to trial. Defendant Phillips contends that Sparto is not entitled to the privilege under the excessive publication doctrine because Sparto discussed her accusations with past and present HFH employees and patients, and Sparto's family and acquaintances. Defendant Phillips also argues that Sparto's statements outside of the judicial proceedings support each claim. The Court will discuss these arguments in turn.

A. JUDICIAL PROCEEDINGS PRIVILEGE

"Under the law of defamation, false and defamatory statements are not actionable if they are protected by a legal privilege."[10] The judicial proceedings privilege provides an absolute privilege for statements (1) "made during or in the course of a judicial proceeding," (2) "that have some reference to the subject matter of the proceeding," and (3) are "made by someone acting in the capacity of judge, juror, witness, litigant, or counsel."[11] Moreover, "[i]t is essential that the privilege apply to all claims arising from the same allegedly defamatory statements in order to encourage full and free participation in judicial and administrative proceedings."[12]

Defendants' allegations regarding statements made before the UALD and EEOC refer to the claims Sparto filed with those administrative agencies. First, "administrative proceedings, such as the proceeding before the EEOC, are considered to be 'judicial proceedings' for purposes

---

[10] *DeBry v. Godbe*, 992 P.2d 979, 983 (Utah 1999).

[11] *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997) (citing *Allen v. Ortez*, 802 P.2d 1307, 1313 (Utah 1990)).

[12] *Id.* at 1258 (explaining that claims for defamation, invasion of privacy, intentional infliction of emotional distress, and intentional interference with business relations are all subject to the judicial proceedings privilege).

of applying absolute privilege."[13] Second, the allegedly defamatory statements directly refer to the subject matter of the administrative proceedings—namely, Sparto's allegations regarding Phillips' conduct. Third, Sparto was acting in her capacity as a litigant when she asserted claims before the UALD and EEOC. Therefore, Sparto's statements before the UALD and EEOC are protected by the judicial proceedings privilege.

Similarly, the Utah Supreme Court has found that statements made to the Court— including those in a Complaint—are protected by the judicial proceedings privilege.[14]

Therefore, the Court will dismiss all claims arising from Sparto's statements to the UALD, the EEOC, or this Court.

The judicial proceedings privilege does not apply to the statements Sparto allegedly made to past and present HFH employees and patients, and Sparto's family and acquaintances. Little detail has been provided about these statements. It is not clear that the statements were made in connection with a judicial proceeding or that Sparto was acting in her capacity as a litigant when making the alleged statements. The sufficiency of the evidence concerning these statements will be discussed below.

B.  EXCESSIVE PUBLICATION

Defendant Phillips argues that Sparto is not entitled to the judicial proceedings privilege because she discussed her accusations about Phillips' conduct with her family and acquaintances and with former and current HFH employees. Sparto contends that Defendants have failed to identify any statements that would exceed the privilege.

---

[13] *Thompson v. Cmty. Nursing Serv. & Hospice*, 910 P.2d 1267, 1268 (Utah Ct. App. 1996).

[14] *See Pratt v. Nelson*, 164 P.3d 366, 376 (Utah 2007) (finding allegations in a Complaint to be "clearly protected by the judicial proceedings privilege").

5

"Case law generally holds that communications that are otherwise privileged lose their privilege if the statement is excessively published, that is, published to more persons than the scope of the privilege requires to effectuate its purpose."[15] "In other words, the statement must be published to those 'who did not have a legitimate role in resolving the dispute,' or 'to persons who did not have an adequate legal interest in the outcome of the proposed litigation.'"[16] For example, statements to reporters have been found to exceed the judicial proceedings privilege because the press typically lacks a connection to the judicial proceeding.[17] "Whether a statement is entitled to the protection of a conditional privilege presents a question of law; whether the holder of the privilege lost it due to abuse presents a question of fact."[18] If a genuine factual dispute exists, "[t]he issue of whether there has been excessive publication is a question of fact" reserved for the jury.[19] Therefore, the Court must determine whether a genuine dispute exists that requires a jury to determine whether Sparto abused the judicial proceedings privilege by making statements to (1) her family, (2) her acquaintances, (3) current and former Hearts for Hospice employees, or (4) current and former Hearts for Hospice patients.

---

[15] *DeBry*, 992 P.2d at 985.

[16] *Campbell v. Castle Stone Homes, Inc.*, No. 2:09-CV-250 TS, 2011 WL 902637, at *13 (D. Utah Mar. 15, 2011) (quoting *Krouse v. Bower*, 20 P.3d 895, 900 (Utah 2001)).

[17] *Davis v. Garrity*, No. 2:13-CV-349 DS, 2013 WL 5745554, at *2 (D. Utah Oct. 23, 2013); *Pratt*, 164 P.3d at 377.

[18] *O'Connor v. Burningham*, 165 P.3d 1214, 1224 (Utah 2007).

[19] *SCO Group, Inc. v. Novell, Inc.*, No. 2:04-CV-139 TS, 2010 WL 691710, at *1 (D. Utah Feb. 22, 2010) (citing *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58 (Utah 1991) ("Whether a publication is conditionally privileged is a question of law to be determined by the trial court, unless a genuine factual issue exists regarding whether the scope of the qualified privilege has been transcended . . . .").

*1. Statements to Sparto's Family Members*

Defendant Phillips directs the Court's attention to the following deposition testimony by Sparto, wherein she testifies that she spoke about her accusations against Defendants with her husband, Joe Sparto, and her two daughters:

> Q: Did you ever talk with anybody else about the sexual conversations or unwanted touching at Hearts for Hospice?
> . . . .
> A: I know we've talked about it. We've discussed several people, because you've asked me this question before.
> Q: I've asked you about employees of Hearts for Hospice, I think. But . . . I don't think I've asked you about anyone else outside.
>     Mr. Stavros: Joe. I think he asked her about Joe.
> Q: Your husband, Joe. Okay, yeah.
>     Mr. Stavros: Other than that.
> A: Oh, you're talking about people other than . . . [my daughter] and Joe . . . ?
> . . . .
> Q: During your employment with Hearts for Hospice, or before you were let go in mid-January, did you discuss or talk about the sexual harassment, as you perceived it, that was going on at Hearts for Hospice?
> A: Nobody outside my family. I have two daughters, and I talked to both my daughters about that.[20]

Defendant Phillips did not submit any affidavits or other evidence providing more detail about these statements. Even viewing the facts in the light most favorable to the nonmoving party, the scintilla of evidence contained in Sparto's deposition testimony is lacking. Defendant Phillips has not met his burden to demonstrate a genuine dispute of material fact regarding whether Sparto abused the judicial proceedings privilege based on these statements. Therefore, the Court finds there is insufficient evidence for a jury to reasonably conclude that Sparto's statements to her family members was an abuse of the judicial proceedings privilege.

---

[20] Docket No. 45-4, at 7–8.

2. *Statements to Sparto's Acquaintances*

Defendants allege that Sparto published defamatory statements to her acquaintances. But Defendant Phillips did not provide any additional information about the identity of these acquaintances or the content of the allegedly defamatory statements. Defendant Phillips does, however, argue that the medical community in general is aware of Sparto's accusations. Viewing the facts in the light most favorable to the non-moving party, the Court construes this allegation to mean that Sparto has communicated her accusations against Defendants with various persons in the medical community, with whom she is acquainted.

Phillips attested that "one of [HFH's] marketers said that the medical community in general was aware of Patti's accusations."[21] That marketer, Laurie Gilmore, also submitted an affidavit in which she explained,

> The first I heard about the lawsuit that Patti Sparto filed was from others out in the health care community, rather than from anyone at Hearts for Hospice. It's been so long now I can't remember exactly who said what to me, but I do recall that I heard from multiple people that Patti Sparto told them that she had filed a lawsuit against Hearts for Hospice and that there were other lawsuits as well.[22]

Ms. Gilmore's statement only indicates that Sparto communicated to members of the health care community that she had filed a lawsuit against HFH and that other lawsuits had also been filed. It is unclear how these statements could be defamatory—Sparto did file a lawsuit against Defendants, and Defendants have also been the subject of multiple legal complaints. In fact, during discovery, Defendants provided information regarding complaints filed with the UALD by former employees. Defendant Phillips has also failed to present sufficient evidence to demonstrate that a genuine factual dispute exists—Ms. Gilmore is unable to name one of the

---

[21] Docket No. 45-1, at 4.

[22] Docket No. 46, at 2.

multiple people who relayed this information to her, or to remember a specific statement that any one of them made. Therefore, the Court concludes there is insufficient evidence for a jury to reasonably find Sparto's statements to her acquaintances constituted an abuse of the judicial proceedings privilege.

       3.     *Statements to Current and Former HFH Employees*

Defendants also allege that Sparto made defamatory statements to current and former HFH employees. Specifically, Defendant Phillips asserts Sparto made defamatory statements to two prior employees—Cindy Gourley and Robyn McNeel—and one current employee—Cody Preston.[23]

In his deposition, Phillips explained that he learned about all of these alleged statements from Mr. Preston.[24] But Defendants have presented little evidence regarding Sparto's statements. For example, it is undisputed that Mr. Preston did not speak with Ms. Gourley directly about the statements; rather, Mr. Preston heard "in the field" that Sparto had spoken to Ms. Gourley about the lawsuit.[25] Defendants are unable to identify the person that told Mr. Preston about Ms. Gourley's alleged conversation with Sparto.[26] Moreover, Mr. Preston prepared an affidavit in support of Defendant Phillips's opposition to Sparto's Motion, yet the affidavit makes no reference to conversations he had about Sparto's allegations—either directly with Sparto or with anyone else.[27]

---

[23] Docket No. 45-1, at 4; Docket No. 42-1, at 4.

[24] Docket No. 42-1, at 6, 20.

[25] *Id.* at 6.

[26] *Id.*

[27] Docket No. 45-7.

The only evidence Defendant Phillips presented regarding the alleged conversation with Ms. McNeel was Phillips's own deposition testimony wherein he stated,

> A: It's pretty well known about the lawsuit. There's -- she -- she's -- she said I -- I have sexually discriminated against her and harassed her, and those are false statements from her.
> Q: Okay. Who has she said that to? Publicly.
> A: She has told Cindy Snidely [Gourley], Robin McNeil [sic], Cody Preston, and those -- those people have told other -- others -- individuals.
> . . . .
> Q: [But] the extent of your claim that Ms. Sparto has made public statements about her lawsuit against you and Hearts [for Hospice] is discussions that you have had with Cody Preston?
> A: True.

Other than this brief reference to Ms. McNeel, Defendants offer no supporting evidence of Phillips's allegation regarding Sparto's statements to Ms. McNeel.

As such, the Court concludes there is insufficient evidence for a jury to reasonably find Sparto's alleged statements to current and former employees constituted an abuse of the judicial proceedings privilege.

*4. Statements to Current and Former HFH Patients*

Defendants allege that Sparto made defamatory statements to current and former HFH patients. But Phillips agreed for purposes of this Motion that it is undisputed that "Phillips could not identify a single patient that Sparto made disparaging or defamatory comments to"[28] and "Phillips could not identify a single HFH customer that Sparto has discussed the allegations in the Complaint with."[29] Based on Defendants' concession, the Court finds there is insufficient evidence for a jury to conclude that Sparto's alleged statements to current and former HFH patients constituted an abuse of the judicial proceedings privilege.

---

[28] Docket No. 45, at 5.

[29] *Id.*

In summary, the Court finds that there is insufficient evidence for a jury to conclude that Sparto's alleged statements to her family, acquaintances, and current and former HFH employees and patients constitute an abuse of the judicial proceedings privilege. As such, the Court finds Sparto's statements before this Court, the UALD, and the EEOC are protected by the judicial proceedings privilege.

C.  DEFAMATION CLAIMS

To the extent that Defendants assert defamation claims arising from Sparto's alleged statements to her family, acquaintances, and current and former HFH employees and patients, those claims fail for the reasons discussed above. Defendants have produced insufficient evidence for a reasonable jury to find in favor of Defendants on the defamation claims.

D.  DEFENDANTS' REMAINING CLAIMS

Each of Defendants' remaining claims—intentional interference with prospective economic advantage, intentional infliction of emotional distress, and negligent infliction of emotional distress—also arise from their allegations that Sparto discussed her accusations about Phillips' sexual conduct with her family, acquaintances, and to former HFH employees and patients. For the reasons discussed above, Defendants have presented a mere scintilla of evidence supporting these allegations. Without evidence that Sparto discussed publicly the conduct described in Sparto's Complaint, a reasonable jury could not return a verdict in favor of Defendants on their counterclaims arising from Sparto's alleged statements.

Therefore, the Court finds that there is no issue for trial because Defendants have presented insufficient evidence for a reasonable jury to return a verdict on any of the remaining claims arising from Sparto's alleged statements.

## V. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 42) is GRANTED.

The hearing set for February 27, 2014, is STRICKEN.

DATED this 13th day of February, 2014.

BY THE COURT:

TED STEWART
United States District Judge